E-filing

10.406

STEPHAN C. VOLKER (CSB #63093)
JOSHUA A.H. HARRIS (CSB #226898)
BRIDGET A. ROBERTS (CSB #251941)
LAW OFFICES OF STEPHAN C. VOLKER
436 – 14th Street, Suite 1300
Oakland, CA 94612
TEL: 510/496-0600
FAX: 510/496-1366

FILED

APR 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Attorneys for Plaintiffs

ADR

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CALifornians for Renewable Energy, a
California non-profit public benefit
corporation representing California
consumers, and its counsel, Stephan C.
Volker,

        Plaintiffs,

    v.

California Public Utilities Commission,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civ. No. C08-01 95

**COMPLAINT FOR VIOLATION
OF CONSTITUTIONAL,
STATUTORY AND COMMON
LAW CIVIL RIGHTS; DEMAND
FOR JURY TRIAL**

**JURY TRIAL DEMANDED**

Plaintiffs, CALifornians for Renewable Energy ("CARE") and Stephan C. Volker,

allege as follows:

## I. INTRODUCTION

1.    This civil rights action is brought to redress violations of plaintiffs' due

process rights under the Fifth and Fourteenth Amendments of the United States

Constitution and article I, section 7 of the California Constitution by the California

Public Utilities Commission (the "Commission" or "defendant") when it arbitrarily

set rates for intervenors' advocates and experts who appear before the Commission

without notice to them in violation of their right to proper compensation under the

procedures established in California Public Utilities Code section 1801 *et seq.*

2.    The California Public Utilities Code provides in section 1804 that

intervenors who make a substantial contribution to the decisionmaking process of the

GO A4 SEC. #
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

1   Commission on behalf of the utility-consuming public are entitled to appropriate
2   compensation. Public Utilities Code section 1806 directs in pertinent part that "[t]he
3   computation of compensation awarded pursuant to Section 1804 shall take into
4   consideration the market rates paid to persons of comparable training and experience
5   who offer similar services."

6        3.     Without notice to plaintiffs nor consideration of the market rate of plaintiff
7   Stephan C. Volker, a licensed attorney, the Commission has determined that the prior
8   rates paid to intervenors' advocates and experts shall be fixed as their "market rates" and
9   thereafter be frozen at those prior levels (subject to periodic cost-of-living increases at
10   the Commission's discretion). Neither plaintiff CARE, nor CARE's lead counsel in
11   many Commission proceedings, plaintiff Stephan C. Volker, was given notice of the
12   Commission's informal and only selectively noticed intervenor rate-freezing
13   proceedings. Thus, CARE was never offered an opportunity to explain to the
14   Commission before it made this determination that the rate previously awarded Mr.
15   Volker was a discounted public interest rate *not based on his market value*.
16   Consequently, Mr. Volker was and has been locked into a low, *below*-market rate,
17   despite his entitlement to "market rates" under the Public Utilities Code.

18        4.     The Commission's lack of notice to plaintiffs prior to its determination of
19   Mr. Volker's rate therefore violated Mr. Volker's and CARE's due process rights under
20   the Fifth and Fourteenth Amendments of the United States Constitution and article I,
21   section 7 of the California Constitution. CARE thus seeks both a prospective and a
22   retroactive adjustment to the Commission's determination of Mr. Volker's rate that takes
23   into consideration his true market rate, as required by the Public Utilities Code, and a
24   recalculation of his attorney fee awards that have been handed down by the Commission
25   since its erroneous rate freeze determination. CARE also seeks a declaration that Mr.
26   Volker's hourly rate in future Commission proceedings should be based on his market
27   rate and not on the below-market rate previous assigned to him by the Commission in its
28   intervenor rate-setting proceeding.

1

## II.    JURISDICTION

2      5.    This case is brought pursuant to 42 U.S.C. §§ 1983 and 1985, the Fifth and

3    Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and

4    1343. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant

5    to 28 U.S.C. § 1367 and 42 U.S.C. § 1988.

6

## III.    VENUE

7      6.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because

8    defendant resides, and plaintiffs' claims arose, in this judicial district.

9

## IV.    DEMAND FOR JURY TRIAL

10      7.    Plaintiffs request a jury trial on their claims.

11

## V.    PARTIES

12      8.    Plaintiff CARE, at all times mentioned in this petition, has been and now is

13    a non-profit public benefit corporation organized under the laws of California in 1999

14    for the purpose of educating the public about, and encouraging public agencies to

15    consider, alternative forms of renewable energy as a means of avoiding (1) dependence

16    on declining supplies of fossil fuels and (2) the harmful air emissions their use

17    occasions. CARE and its members are beneficially interested in securing this Court's

18    review of the Commission's decisions so that its counsel will be fairly compensated for

19    his work done on CARE's behalf in the Commission. CARE also seeks review of the

20    Commission's compensation decisions to ensure that it can procure adequate counsel in

21    future proceedings. CARE seeks to eliminate the risk that counsel for public-interest,

22    non-profit organizations may not, in the future, be able to participate in important

23    Commission decisionmaking processes due to the Commission's unnoticed and

24    erroneous determination of intervenors' hourly rate compensation.

25      9.    Plaintiff Stephan C. Volker is a public interest environmental lawyer with a

26    small private practice in Oakland, California. Mr. Volker's firm brings lawsuits and

27    participates in administrative agency proceedings to enforce environmental laws,

28    typically on behalf of conservation organizations and citizens' groups. Mr. Volker has

---

COMPLAINT FOR VIOLATION OF
CONSTITUTIONAL CIVIL RIGHTS                                                    3

1  practiced environmental law since 1974. Mr. Volker represented CARE in the

2  proceedings in question before the defendant Public Utilities Commission.

3       10.    Defendant California Public Utilities Commission is a special-purpose

4  public agency established and operating independently from the State of California,

5  vested with authority to regulate public utilities pursuant to article XII, section 5 of the

6  California Constitution and California Public Utilities Code section 701. The

7  Commission does not perform central governmental functions, and its rulings are not

8  subject to control by the state government.

9                    **VI.    STATEMENT OF THE CASE**

10      11.    As alleged above, the California Public Utilities Code provides a procedure

11  by which intervenors who make a substantial contribution to a Commission decision may

12  claim compensation. Public Utilities Code section 1806 directs in pertinent part that

13  "[t]he computation of compensation awarded pursuant to [the Public Utilities Code] shall

14  take into consideration the market rates paid to persons of comparable training and

15  experience who offer similar services."

16      12.    On August 19, 2004, the Commission issued Decision 04-08-046 in which

17  it granted a Certificate of Public Convenience and Necessity to Pacific Gas & Electric

18  Company ("PG&E") to construct the Jefferson-Martin("J-M") transmission line to

19  provide an alternative source of electricity to San Francisco, thereby eliminating its

20  dependence on the highly-polluting, fossil-fuel powered Hunter's Point Power Plant that

21  had been contaminating poor communities of color near the plant. CARE had intervened

22  in that proceeding on behalf of its members residing in the Hunter's Point community

23  and advocated successfully in favor of the Commission's approval of the J-M line. On

24  October 7, 2004, CARE timely filed a Request for Award of Compensation and

25  supporting declarations based on its substantial contribution to the resolution of that

26  case. Along with its application for fees, CARE submitted documentation demonstrating

27  that Mr. Volker's market rates were at least $400 per hour at that time.

28

COMPLAINT FOR VIOLATION OF
CONSTITUTIONAL CIVIL RIGHTS                                              4

13.    On April 13, 2006, the Commission issued D.06-04-018, granting intervenor compensation to CARE for substantial contributions to Decision 04-08-046. However, instead of awarding Mr. Volker his market rate, the Commission reduced the hourly rate for Mr. Volker from the requested $400 to $270, citing for support prior Commission decisions ALJ-184 and D.05-11-031. In those decisions, the Commission had, without notice to Mr. Volker, fixed his rate based on a below-market rate previously awarded Mr. Volker after he had agreed to represent the Sierra Club, a public benefit charitable organization, at a reduced rate in a previous proceeding.

14.    On April 17, 2006, CARE timely filed a petition for modification of D.06-04-018, requesting that Mr. Volker's fee be modified to conform to his market rate. Citing Public Utilities Code section 1806, CARE submitted further documentation attesting to Mr. Volker's qualifications and experience and demonstrating that his hourly rate at that time was *at least* $400. On June 15, 2006,the Commission issued D.06-06-025, denying CARE's petition for modification of D.06-04-018. On July 13, 2006, CARE timely filed a petition for rehearing of D.06-06-025, again requesting that Mr. Volker's fee be modified to reflect his current market rate. On October 5, 2006, the Commission issued D.06-10-023, denying CARE's petition for rehearing of D.06-04-018.

15.    The Commission's stated reason for reducing Mr. Volker's hourly rate to $270 was that it had awarded Mr. Volker an hourly rate of $250 several years previously in a different proceeding in which Mr. Volker represented the Sierra Club. The basis of that previous hourly rate, however, was *not that Mr. Volker's market rate was then $250.* Rather, the basis was that Mr. Volker's client in that matter, the Sierra Club, had, on April 4, 2000 and prior to its retention of Mr. Volker, filed a Notice of Intent to Claim Compensation ("NOI") which capped its future counsel's hourly rate at $250. Therefore, notwithstanding that Mr. Volker's actual market rate in 2000 already exceeded $300, the Sierra Club only sought compensation at the rate stated in its NOI – $250.

1    16.    In its calculation of Mr. Volker's rate, the Commission cited resolution

2    ALJ-184 and D.05-11-031. Specifically, the Commission stated in attempted

3    justification of its decision to freeze Mr. Volker's hourly rate at the prior, below-market

4    rate:

5       In Resolution ALJ-184, we set forth guidelines and principles for setting
        intervenors' hourly rates for work performed in 2004. In D.05-11-031, we
6       set forth guidelines and principles for setting 2005 rates, and found that
        rates previously adopted in 2003 and 2004 are reasonable. Resolution
7       ALJ-184 deems an increase of 8% above previously adopted 2003 rates as
        reasonable for work performed in 2004. We previously adopted a rate of
8       $250 for Volker for work performed in 2000-2003. Increasing Volker's
        2003 rate by 8% results in the $270 rate adopted in D.06-04-018 for his
9       2004 work.

10   Plaintiffs bring this action to secure a judicial declaration that the Commission's

11   arbitrary basis for determining Mr. Volker's rate, as delineated in ALJ-184 and D.05-11-

12   031, is unconstitutional because it deprived plaintiffs of the fair market value of Mr.

13   Volker's services without due process of law.

14   17.    Prior to conducting the intervenor rate-setting proceedings that resulted in

15   ALJ-184 and D.05-11-031, the Commission never gave notice to CARE, to Mr. Volker,

16   or to many of the other intervenors' advocates or experts whose rates would be forever

17   frozen (subject to cost-of-living adjustments) by the Commission's decision. Neither

18   CARE nor Mr. Volker received notice by any means of the proceedings leading up to

19   ALJ-184 and D.05-11-031.

20   18.    ALJ-184 was not the product of a properly-noticed proceeding in which all

21   affected parties had an opportunity to participate and thereby be heard. According to

22   ALJ-184, the administrative law judge in charge of the proceeding "wrote to over 40

23   *regular participants* in our proceedings, including frequent intervenors and utilities from

24   the various regulated industries [and] invited comments and suggestions to begin

25   development of this annual process." *Id.* at 1, emphasis added. Only nine parties

26   submitted comments. Neither CARE nor Mr. Volker was among those surveyed.

27   Neither had actual notice of the survey. Although the Commission thus provided notice

28   to and solicited comments from Commission *insiders*, it failed to warn other

1 | practitioners such as Mr. Volker that their future intervenor rates would be fixed
2 | indefinitely by the proceeding.

3 |     19.    Decision 05-11-031 resulted from a rulemaking instituted by the PUC.
4 | Neither CARE nor Mr. Volker received notice by mail, fax or email of this
5 | proceeding.  Nor did they have actual notice of this rulemaking.  Only four regulated
6 | utilities and four frequent intervenors participated in this proceeding.

7 |     20.    Thus, Mr. Volker, along with any other advocate or expert not on the
8 | Commission's selective, insider mailing list for the ALJ-184 and D.05-11-031
9 | proceedings, was denied notice of those proceedings even though they converted *all* of
10 | the 2003 rates – market and non-market alike – into "reasonable market rates" to be
11 | applied to all future fee awards.  Consequently, the Commission denied many potential
12 | intervenors their right to notice of the Commission's rate-freezing proceeding, despite
13 | the fact that the Commission's decision would have far-reaching impacts on the ability
14 | of intervenors, such as CARE, to procure counsel and expert advice for assistance and
15 | representation in the future.  The Commission therefore failed to comply with the
16 | procedural due process guarantees of the Fifth and Fourteenth Amendments of the
17 | United States Constitution and article I, section 7 of the California Constitution when it
18 | approved ALJ-184 and D.05-11-031 and subsequently limited Mr. Volker's future
19 | compensation awards significantly below the market rate to which he was entitled
20 | without giving him notice and an opportunity to be heard to correct this error.

21 |     21.    Since ALJ-184 and D.05-11-031, the Commission has continued to
22 | assign Mr. Volker rates in the $250-290 range – even after cost-of-living adjustments –
23 | despite CARE's and Mr. Volker's documentation in each request for compensation
24 | of the fact that Mr. Volker's market rate was between $400 and $650 per hour.
25 | Exacerbating its initial denial of plaintiffs' due process rights, the Commission has
26 | continued to deprive plaintiffs of their statutory right to have Mr. Volker's fees
27 | determined in light of "the market rates paid to persons of comparable training and

28 |

1    experience who offer similar services," as required by California Public Utilities Code

2    section 1806. Plaintiffs ask this Court to rectify this wrong.

3    ## VII.  FIRST CLAIM FOR RELIEF

4    FOR DENIAL OF DUE PROCESS RIGHTS SECURED BY THE FIFTH AND
     FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND THE CIVIL
5    RIGHTS ACT OF 1964
     (Against Defendant California Public Utilities Commission)
6    42 U.S.C.A. 1983

7    22.    The paragraphs set forth above are realleged and incorporated herein by

8    this reference.

9    23.    In freezing CARE's lead counsel's assigned hourly rate at a lower, below-

10   market rate, without giving plaintiffs notice and an opportunity to be heard to correct this

11   error, the Commission violated plaintiffs' due process rights. CARE and Mr. Volker

12   have been and will continue to adversely affected by the Commission's arbitrary and

13   unfair decision. CARE has a right to receive compensation for its advocates, and Mr.

14   Volker has a right to be compensated for his legal services, in the manner prescribed by

15   the California Public Utilities Code, which states that "[t]he computation of

16   compensation awarded pursuant to Section 1804 shall take into consideration the market

17   rates paid to persons of comparable training and experience who offer similar services."

18   Cal. Pub. Util. Code § 1806.

19   24.    The Commission's continuing actions to circumvent plaintiffs' entitlement

20   to market-based fees, based on a miscalculation of those fees without notice to CARE or

21   Mr. Volker, violate the Fifth and Fourteenth Amendments' guarantee that due process be

22   provided before a state may deprive a person such as Mr. Volker, or an organization of

23   persons such as CARE, of property.

24   ## VIII.  SECOND CLAIM FOR RELIEF

25   FOR DENIAL OF DUE PROCESS RIGHTS SECURED BY ARTICLE I, SECTION 7
     OF THE CALIFORNIA CONSTITUTION AND THE CIVIL RIGHTS ACT OF 1964.
26   (Against Defendant California Public Utilities Commission)
     42 U.S.C.A. § 1983

27   25.    The paragraphs set forth above are realleged and incorporated herein by

28   this reference.

1       26.   The Commission's continuing actions to circumvent plaintiffs' entitlement

2   to market-based fees, based on a miscalculation of those fees without notice to CARE or

3   Mr. Volker, violates the prohibition in article I, section 7 of the California Constitution

4   that a person such as Mr. Volker, or an organization of persons such as CARE, may not

5   be deprived of property without due process of law.

6                                **IX.  RELIEF REQUESTED**

7       WHEREFORE plaintiffs demand judgment against defendants as follows:

8   A.    Legal Relief:

9           1.    Compensatory damages in an amount this Court and jury deem just

10              and proper to compensate plaintiffs for the injuries they have

11              suffered as a result of defendant's wrongful conduct.

12          2.    Litigation costs and attorneys' fees.

13  B.    Equitable and Declaratory Relief:

14          1.    A declaration that Mr. Volker's prior non-market rates that have

15              been assigned to him in the proceedings subsequent to ALJ-184 and

16              D.05-11-031 are invalid.

17          2.    An injunction restraining defendant from using those prior non-

18              market rates when assigning a rate to Mr. Volker in the future.

19  C.    Other Relief:

20          1.    Such other and further relief as may appear appropriate and just.

21  DATED:  April 14, 2008

22                               Respectfully submitted,

23                               LAW OFFICES OF STEPHAN C. VOLKER

24                               By:

25                                    BRIDGET A. ROBERTS
                                Attorneys for Plaintiffs

26

27

28