STEPHAN C. VOLKER (CSB #63093)
JOSHUA A.H. HARRIS (CSB #226898)
BRIDGET A. ROBERTS (CSB #251941)
LAW OFFICES OF STEPHAN C. VOLKER
436 – 14th Street, Suite 1300
Oakland, CA  94612
TEL: 510/496-0600
FAX: 510/496-1366

10.406

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAlifornians for Renewable Energy, a California non-profit public benefit corporation representing California consumers, and its counsel, Stephan C. Volker,<br><br>  Plaintiffs,<br>v.<br><br>California Public Utilities Commission, Michael R. Peevey, in his official and individual capacity, Dian Gruenich, in her official and individual capacity, John Bohn, in his official and individual capacity, Rachelle Chong, in her official and individual capacity, Timothy Simon, in his official and individual capacity, and Geoffrey Brown, in his official and individual capacity,<br><br>  Defendants.<br>_____ | Civ. No. C08-01954-JL<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CONSTITUTIONAL, STATUTORY AND COMMON LAW CIVIL RIGHTS; DEMAND FOR JURY TRIAL**<br><br>**JURY TRIAL DEMANDED**<br><br>(F.R.C.P. 15(a)(1)(A))<br><br>Judge:   Hon. James J. Larson,<br>             Magistrate-Judge |

Plaintiffs, CAlifornians for Renewable Energy ("CARE") and Stephan C. Volker, allege as follows:

## I. INTRODUCTION

1.     This civil rights action is brought to redress violations of plaintiffs' due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 7 of the California Constitution by the California Public Utilities Commission and the above-named individual Commissioners comprising the Commission (collectively the "Commission" or "defendant") when it arbitrarily set

rates for intervenors' advocates and experts who appear before the Commission without notice to them in violation of their right to proper compensation under the procedures established in California Public Utilities Code section 1801 *et seq*.

2. The California Public Utilities Code provides in section 1804 that intervenors who make a substantial contribution to the decisionmaking process of the Commission on behalf of the utility-consuming public are entitled to appropriate compensation. Public Utilities Code section 1806 directs in pertinent part that "[t]he computation of compensation awarded pursuant to Section 1804 shall take into consideration the market rates paid to persons of comparable training and experience who offer similar services." Further, Public Utilities Code section 1807 directs that all payments under the intervenor compensation program "shall be paid by the public utility which is the subject of the hearing, investigation, or proceeding . . .," and not by either the Commission, or by the State of California.

3. Without notice to plaintiffs nor consideration of the market rate of plaintiff Stephan C. Volker, a licensed attorney of 34 years' experience, the Commission determined that the prior rates paid to intervenors' advocates and experts shall be fixed as their "market rates" and thereafter be frozen at those prior levels (subject to periodic cost-of-living increases at the Commission's discretion). Neither plaintiff CARE, nor CARE's lead counsel in many Commission proceedings, plaintiff Stephan C. Volker, was given notice of the Commission's informal and only selectively noticed intervenor rate-freezing proceedings. Thus, CARE was never offered an opportunity to explain to the Commission before it made this determination that the rate previously awarded Mr. Volker was a discounted public interest rate *not based on his market value*. Consequently, Mr. Volker was and has been locked into a low, *below*-market rate, despite his entitlement to "market rates" under the Public Utilities Code.

4. The Commission's lack of notice to plaintiffs prior to its determination of Mr. Volker's rate therefore violated Mr. Volker's and CARE's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I,

section 7 of the California Constitution. CARE thus seeks both a prospective and a retroactive adjustment to the Commission's determination of Mr. Volker's rate that takes into consideration his true market rate, as required by the Public Utilities Code, and a recalculation of his attorney fee awards that have been handed down by the Commission since its erroneous rate freeze determination. CARE also seeks a declaration that Mr. Volker's hourly rate in future Commission proceedings should be based on his market rate and not on the below-market rate previous assigned to him by the Commission in its intervenor rate-setting proceeding.

## II. JURISDICTION

5. This case is brought pursuant to 42 U.S.C. §§ 1983 and 1985, the Fifth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 and 42 U.S.C. § 1988.

## III. VENUE

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because defendant resides, and plaintiffs' claims arose, in this judicial district.

## IV. DEMAND FOR JURY TRIAL

7. Plaintiffs request a jury trial on their claims.

## V. PARTIES

8. Plaintiff CARE, at all times mentioned in this complaint, has been and now is a non-profit public benefit corporation organized under the laws of California in 1999 for the purpose of educating the public about, and encouraging public agencies to consider, alternative forms of renewable energy as a means of avoiding (1) dependence on declining supplies of fossil fuels and (2) the harmful air emissions their use occasions. CARE and its members are beneficially interested in securing this Court's review of the Commission's decisions so that its counsel will be fairly compensated for his work done on CARE's behalf in the Commission. CARE also seeks review of the Commission's compensation decisions to ensure that it can procure adequate counsel in

future proceedings. CARE seeks to eliminate the risk that counsel for public-interest, non-profit organizations may not, in the future, be able to participate in important Commission decisionmaking processes due to the Commission's unnoticed and erroneous determination of intervenors' hourly rate compensation.

9. Plaintiff Stephan C. Volker is a public interest environmental lawyer with a small private practice in Oakland, California. Mr. Volker's firm brings lawsuits and participates in administrative agency proceedings to enforce environmental laws, typically on behalf of conservation organizations and citizens' groups. Mr. Volker has practiced environmental law since 1974. Mr. Volker represented CARE in the proceedings in question before the Commission.

10. Defendant California Public Utilities Commission is a special-purpose public agency established and operating independently from the State of California, vested with authority to regulate public utilities pursuant to article XII, section 5 of the California Constitution and California Public Utilities Code section 701. The Commission does not perform central governmental functions, and its rulings are not subject to control by the state government. The Commission's awards of compensation for intervenors in proceedings before the Commission are paid by regulated utilities and never by the Commission or the State of California.

11. Defendant Michael R. Peevey is the President of the Commission and has served on the Commission since March 2002. In making the decisions challenged in this action, Defendant Peevey acted under the color of state law.

12. Defendant Dian Gruenich has served on the Commission since January 18, 2005. In making the decisions challenged in this action, Defendant Gruenich acted under the color of state law.

13. Defendant John Bohn has served on the Commission since May 5, 2005. In making the decisions challenged in this action, Defendant Bohn acted under the color of state law.

14. Defendant Rachelle Chong has served on the Commission since January 12, 2006. In making the decisions challenged in this action, Defendant Chong acted under the color of state law.

15. Defendant Timothy Simon has served on the Commission since February 2007. In making the decisions challenged in this action, Defendant Simon acted under the color of state law.

16. Defendant Geoffrey Brown served on the Commission from January 18, 2002 until he was replaced by Commission Simon in February 2007. In making the decisions challenged in this action, Defendant Brown acted under the color of state law.

## VI.  STATEMENT OF THE CASE

17. As alleged above, the California Public Utilities Code provides a procedure by which intervenors who make a substantial contribution to a Commission decision may claim compensation. Public Utilities Code section 1806 directs in pertinent part that "[t]he computation of compensation awarded pursuant to [the Public Utilities Code] shall take into consideration the market rates paid to persons of comparable training and experience who offer similar services."

18. On August 19, 2004, the Commission issued Decision 04-08-046 in which it granted a Certificate of Public Convenience and Necessity to Pacific Gas & Electric Company ("PG&E") to construct the Jefferson-Martin("J-M") transmission line to provide an alternative source of electricity to San Francisco, thereby eliminating its dependence on the highly-polluting, fossil-fuel powered Hunter's Point Power Plant that had been contaminating poor communities of color near the plant. CARE had intervened in that proceeding on behalf of its members residing in the Hunter's Point community and advocated successfully in favor of the Commission's approval of the J-M line. On October 7, 2004, CARE timely filed a Request for Award of Compensation and supporting declarations based on its substantial contribution to the resolution of that case. Along with its application for fees, CARE submitted documentation demonstrating that Mr. Volker's market rates were at least $400 per hour at that time.

19.     On April 13, 2006, the Commission issued D.06-04-018, granting intervenor compensation to CARE for substantial contributions to Decision 04-08-046. However, instead of awarding Mr. Volker his market rate, the Commission reduced the hourly rate for Mr. Volker from the requested $400 to $270, citing for support two prior Commission decisions, Resolution ALJ-184 ("ALJ-184") and D.05-11-031. In those decisions, the Commission had, without notice to Mr. Volker, fixed his rate based on a below-market rate previously awarded Mr. Volker after he had agreed to represent the Sierra Club, a public benefit charitable organization, at a reduced rate in a previous proceeding.

20.     On April 17, 2006, CARE timely filed a petition for modification of D.06-04-018, requesting that Mr. Volker's fee be modified to conform to his market rate. Citing Public Utilities Code section 1806, CARE submitted further documentation attesting to Mr. Volker's qualifications and experience and demonstrating that his hourly rate at that time was *at least* $400. On June 15, 2006, the Commission issued D.06-06-025, denying CARE's petition for modification of D.06-04-018. On July 13, 2006, CARE timely filed a petition for rehearing of D.06-06-025, again requesting that Mr. Volker's fee be modified to reflect his current market rate. On October 5, 2006, the Commission issued D.06-10-023, denying CARE's petition for rehearing of D.06-04-018.

21.     The Commission's stated reason for reducing Mr. Volker's hourly rate to $270 was that it had awarded Mr. Volker an hourly rate of $250 several years previously in a different proceeding in which Mr. Volker represented the Sierra Club. The basis of that previous hourly rate, however, was *not that Mr. Volker's market rate was then $250*. Rather, the basis was that Mr. Volker's client in that matter, the Sierra Club, had, on April 4, 2000 and prior to its retention of Mr. Volker, filed a Notice of Intent to Claim Compensation ("NOI") which capped its future counsel's hourly rate at $250. Therefore, notwithstanding that Mr. Volker's actual market rate in 2000 already exceeded $300, the Sierra Club only sought compensation at the rate stated in its NOI – $250.

22. In its calculation of Mr. Volker's rate, the Commission cited ALJ-184 and D.05-11-031. Specifically, the Commission stated in attempted justification of its decision to freeze Mr. Volker's hourly rate at the prior, below-market rate:

> In Resolution ALJ-184, we set forth guidelines and principles for setting intervenors' hourly rates for work performed in 2004. In D.05-11-031, we set forth guidelines and principles for setting 2005 rates, and found that rates previously adopted in 2003 and 2004 are reasonable. Resolution ALJ-184 deems an increase of 8% above previously adopted 2003 rates as reasonable for work performed in 2004. We previously adopted a rate of $250 for Volker for work performed in 2000-2003. Increasing Volker's 2003 rate by 8% results in the $270 rate adopted in D.06-04-018 for his 2004 work.

Plaintiffs bring this action to secure a judicial declaration that the Commission's arbitrary basis for determining Mr. Volker's rate, as delineated in ALJ-184 and D.05-11-031, is unconstitutional because it deprived plaintiffs of the fair market value of Mr. Volker's services without due process of law.

23. Prior to conducting the intervenor rate-setting proceedings that resulted in ALJ-184 and D.05-11-031, the Commission never gave notice to CARE, to Mr. Volker, or to many of the other intervenors' advocates or experts whose rates would be forever frozen (subject to cost-of-living adjustments) by the Commission's decision. Neither CARE nor Mr. Volker received notice by any means of the proceedings leading up to ALJ-184 and D.05-11-031.

24. ALJ-184 was not the product of a properly-noticed proceeding in which all affected parties had an opportunity to participate and thereby be heard. According to ALJ-184, the administrative law judge in charge of the proceeding "wrote to over 40 *regular participants* in our proceedings, including frequent intervenors and utilities from the various regulated industries [and] invited comments and suggestions to begin development of this annual process." ALJ-184 at 1, emphasis added. Only nine parties submitted comments. Neither CARE nor Mr. Volker was among those surveyed. Neither had actual notice of the survey. Although the Commission provided notice to and solicited comments from Commission *insiders*, it failed to warn other practitioners

such as Mr. Volker that their future intervenor rates would be fixed indefinitely by the proceeding.

25.  Decision 05-11-031 resulted from a rulemaking instituted by the PUC. Neither CARE nor Mr. Volker received notice by mail, fax or email of this proceeding. Nor did they have actual notice of this rulemaking. Only four regulated utilities and four frequent intervenors participated in this proceeding.

26.  Thus, Mr. Volker, along with any other advocate or expert not on the Commission's selective, insider mailing list for the ALJ-184 and D.05-11-031 proceedings, was denied notice of those proceedings even though they converted *all* of the 2003 rates – market and non-market alike – into "reasonable market rates" to be applied to all future fee awards. Consequently, the Commission denied many potential intervenors their right to notice of the Commission's rate-freezing proceeding, despite the fact that the Commission's decision would have far-reaching impacts on the ability of intervenors, such as CARE, to procure counsel and expert advice for assistance and representation in the future. The Commission therefore failed to comply with the procedural due process guarantees of the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 7 of the California Constitution when it approved ALJ-184 and D.05-11-031 and subsequently limited Mr. Volker's future compensation awards significantly below the market rate to which he was entitled without giving him notice and an opportunity to be heard to correct this error.

27.  Since ALJ-184 and D.05-11-031, the Commission has continued to assign Mr. Volker rates in the $250-290 range – even after cost-of-living adjustments – despite CARE's and Mr. Volker's documentation in each request for compensation of the fact that Mr. Volker's market rate was between $400 and $650 per hour. Exacerbating its initial denial of plaintiffs' due process rights, the Commission has continued to deprive plaintiffs of their statutory right to have Mr. Volker's fees determined in light of "the market rates paid to persons of comparable training and experience who offer similar services," as required by California Public Utilities Code section 1806.

28. For example, in A.99-09-053, a case in which Mr. Volker successfully advocated protection of the Eel River and other rivers affected by PG&E's hydroelectric dams proposed for sale or auction, the Commission reduced Mr. Volker's past rates to below-market rates based on its rate-freezing decisions. D.07-12-004, issued on December 7, 2007.

29. And in R.06-03-004, a rulemaking designed to give structure to the California Solar Initiative ("CSI"), in which Mr. Volker successfully advocated for greater public access to solar power, the Commission again reduced Mr Volker's requested market rate to a below-market rate. D.07-12-007, issued on December 7, 2007.

30. Additionally, the Commission will soon issue a ruling on Mr. Volker's fee request in C.07-03-006, a case challenging the placement of a youth sports complex over an unsafe, thin-walled, high pressure natural gas pipeline in which Mr. Volker successfully advocated for replacement of the unsafe pipeline. While the rate that will be assigned to Mr. Volker for this proceeding is unknown at present, plaintiffs reserve the right to file a supplemental pleading to include the Commission's ruling on Mr. Volker's fee request in C.07-03-006, if indeed the Commission once again employs its unconstitutional rate-freezing mechanism and bases Mr. Volker's rate based on the non-market rate assigned to him years ago in an unrelated proceeding.

31. Because plaintiffs never received notice of the Commission's rate-freezing proceedings that resulted in ALJ-184 and D.05-11-031, the Commission cannot constitutionally apply those decisions to fee awards submitted by plaintiffs, nor escape adjudication of its failure to provide notice under the Johnson Act, 28 U.S.C. § 1342(3). The initial, inadequately-noticed rate-freezing proceedings and resulting orders formed the foundation on which the Commission based all subsequent incorrect rate determinations. The Commission's failure to give adequate notice to the parties directly affected by the Commission's rate-freezing orders constitutes a violation of those

parties' due process and civil rights, including, but not limited to, the due process and civil rights of plaintiffs.

## VII. STATE COURT PROCEEDINGS

32. Plaintiff CARE filed a petition for a writ of review in the California Court of Appeal challenging the Commission's decision in the Jefferson-Martin case on November 3, 2006. The petition raised only statutory claims based on the language of California Public Utilities Code section 1806, and did not allege any constitutional violations.

33. Without conducting a hearing or ordering the record from the Commission, the Court of Appeal summarily denied CARE's writ petition. The entirety of the ruling stated: "[t]he petition for writ of review is denied." CARE's subsequent petition for review to the California Supreme Court was never adjudicated on the merits, as CARE's motion to allow its late filing was summarily denied.

34. CARE does not have a plain, speedy, and efficient remedy in the courts of California, and thus the Commission may not escape review by this Court under the Johnson Act, 28 U.S.C. § 1342(4).

## VIII. FIRST CLAIM FOR RELIEF

FOR DENIAL OF DUE PROCESS RIGHTS SECURED BY THE FIFTH AND
FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND THE CIVIL
RIGHTS ACT OF 1964

(Against Defendants California Public Utilities Commission, Michael R. Peevey,
in his official and individual capacity, Dian Gruenich, in her official and
individual capacity, John Bohn, in his official and individual capacity,
Rachelle Chong, in her official and individual capacity, Timothy Simon,
in his official and individual capacity, and Geoffrey Brown,
in his official and individual capacity)

42 U.S.C. § 1983

35. The paragraphs set forth above are realleged and incorporated herein by this reference.

36. In freezing CARE's lead counsel's assigned hourly rate at a lower, below-market rate, without giving plaintiffs notice and an opportunity to be heard to correct this error, the Commission violated plaintiffs' due process rights. CARE and Mr. Volker

have been and will continue to be adversely affected by the Commission's arbitrary and unfair decision.  CARE has a right to receive fair, market-based compensation for its advocates, and Mr. Volker has a right to be compensated for his legal services, in the manner prescribed by California Public Utilities Code section 1806, which states that "[t]he computation of compensation awarded pursuant to Section 1804 shall take into consideration the market rates paid to persons of comparable training and experience who offer similar services."

37. The Commission's continuing actions to circumvent plaintiffs' entitlement to market-based fees, based on a miscalculation of those fees without notice to CARE or Mr. Volker, violate the Fifth and Fourteenth Amendments' guarantee that due process be provided before a state may deprive a person such as Mr. Volker, or an organization of persons such as CARE, of property.

## IX. SECOND CLAIM FOR RELIEF

FOR DENIAL OF DUE PROCESS RIGHTS SECURED BY ARTICLE I, SECTION 7 OF THE CALIFORNIA CONSTITUTION AND THE CIVIL RIGHTS ACT OF 1964.

(Against Defendants California Public Utilities Commission, Michael R. Peevey, in his official and individual capacity, Dian Gruenich, in her official and individual capacity, John Bohn, in his official and individual capacity, Rachelle Chong, in her official and individual capacity, Timothy Simon, in his official and individual capacity, and Geoffrey Brown, in his official and individual capacity)

42 U.S.C. § 1983

38. The paragraphs set forth above are realleged and incorporated herein by this reference.

39. The Commission's continuing actions to circumvent plaintiffs' entitlement to market-based fees, based on a miscalculation of those fees without notice to CARE or Mr. Volker, violates the prohibition in article I, section 7 of the California Constitution that a person such as Mr. Volker, or an organization of persons such as CARE, may not be deprived of property without due process of law.

## X. RELIEF REQUESTED

WHEREFORE plaintiffs demand judgment against defendants as follows:

A. <u>Declaratory Relief:</u>

1. A declaration that the non-market rates that the Commission has assigned to Mr. Volker in ALJ-184 and D.05-11-031, and in the proceedings subsequent thereto including those culminating in D.06-04-018, D.07-12-004 and D.07-12-007, are invalid.
2. Litigation costs and attorneys' fees.

B. <u>Equitable Relief</u>:
1. An injunction directing the Commissioners to recalculate Mr. Volker's attorney's fees based on his market rates in the proceedings culminating in ALJ-184, D.05-11-031, D.06-04-018, D.07-12-004, and D.07-12-007.
2. An injunction restraining the Commissioners from using non-market rates when assigning a rate to Mr. Volker in the future.

C. <u>Other Relief</u>:
1. Such other and further relief as may appear appropriate and just.

DATED: July 16, 2008                    Respectfully submitted,

                                        LAW OFFICES OF STEPHAN C. VOLKER

                                        By:/s/ Stephan C. Volker
                                            STEPHAN C. VOLKER
                                            Attorneys for Plaintiffs